UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY ANTHONY SPINOS | CIVIL ACTION |
| VERSUS | NO. 17-1929 |
| SOCIAL SECURITY ADMINISTRATION | SECTION "G" (3) |

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.   BACKGROUND

Plaintiff filed an application for SSI on September 29, 2015, alleging a disability since December 31, 2008. (Adm. Rec. at 18, 193-99). Plaintiff alleged disability due to mental health problems, back/knee pain, a tumor in his right shoulder, and a bullet in his liver. (*Id.* at 112). On November 24, 2016, plaintiff amended his onset of disability date to September 19, 2013. (*Id.* at 207). Plaintiff, born on January 19, 1971, was 42 years old on the date on which he alleged disability and 44 years old at the time of the final administrative decision. (*Id.* at 193). Plaintiff has a sixth-grade education. (*Id.* at 213). Plaintiff has past work experience as a dishwasher, a general laborer, and a produce stocker. (*Id.*).

Defendant initially denied plaintiff's application on February 28, 2014. (*Id.* at 114-17). Plaintiff sought an administrative hearing (*id.* at 120-21), which defendant held on May 18, 2015. (*Id.* at 75-100). Plaintiff and a vocational expert ("VE"), Patricia Ehlinger, testified at the hearing.

At the oral hearing, the ALJ ordered a consultative mental health examination by a psychiatrist and ordered a follow-up administrative hearing.  (*Id.* at 94-95).  A second ALJ held a follow-up hearing on November 24, 2015.  (*Id.* at 38-74).  Plaintiff and VE Mary E. Kelly testified at this second hearing.

On December 29, 2015, the ALJ issued a decision in which she found that plaintiff has not been disabled since September 19, 2013. (*Id.* at 18-33).  In the decision, the ALJ concluded that plaintiff has the severe impairments of displaced overlapping comminuted right clavicular fracture with osteopenia, multilevel degenerative disc diseases of the lumbar spine with spondylolisthesis, osteoarthrosis of the right knee and spurring of the bilateral knees, personality disorder, schizoaffective disorder, mood disorder with anxiety, and obesity.  (*Id.* at 20).  The ALJ held that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.* at 21).  The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work activity as defined in 20 C.F.R. § 404.967(b) within the following parameters: Plaintiff can frequently carry (including pushing or pulling) 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours per eight-hour workday, and sit for six hours per eight-hour workday.  (*Id.* at 24).  Plaintiff can also frequently climb ramps, stairs, ladders, ropes, and scaffolds, and can frequently balance, stoop, kneel, crouch, and crawl.  (*Id.*). He is unable to tolerate overhead reaching with the right upper extremity or exposure to cold, and he is limited to simple, routine tasks commensurate with a specific vocational ("SVP") level of no greater than two. (*Id.*). The ALJ concluded that plaintiff has no past relevant work but can perform the duties of a janitor/cleaner, maid/housekeeper, or stock clerk/order filler.  (*Id.* at 32).  The ALJ thus denied plaintiff SSI.  (*Id.*).

2

Plaintiff asked the Appeals Council ("AC") to review the ALJ's conclusion that he is not disabled. (*Id.* at 14). On January 3, 2017, the Appeals Council denied plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other

3

conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.     ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*,

4

38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age,

5

education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV.   ISSUE ON APPEAL

There is one issue on appeal:

(1)   Whether substantial evidence supports the ALJ's RFC determination.

## V.   ANALYSIS

### 1.   Whether substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence of record and to fully and fairly develop the record. He contends that the ALJ afforded little weight to the opinion of consultative examiner Dr. Donna M. Mancuso. Plaintiff maintains that the ALJ afforded significant weight to the state agency medical consultant when said consultant had not reviewed all of the medical records subsequent to the initial determination.

Despite plaintiff's protestations to the contrary, a review of the record reveals that it contains several physicians' reports of normal mental status consistent with the ALJ's RFC finding for simple, routine, and unskilled work. (Adm. Rec. at 381-91, 404, 500, 505). For example, throughout the relevant period, plaintiff reported no anxiety or sleep disturbances, and practitioners visibly observed that his "mental status exam was normal" and that he had no psychiatric or psychological issues on December 17, 2013, January 30, 2014, April 24, 2014, May 2, 2014, July 24, 2014, and March 24, 2015. (*Id.* at 381-391). Physicians noted normal thought processes, thought content, concentration, memory, intellect, judgment, and insight in February 2015, August 2015, and November 2015. (*Id.* at 404, 500, 505). This report included a February 25, 2015, visit, during which plaintiff reported that his medication was fine, and he denied having any symptoms

6

or problems. (*Id.* at 402). On this occasion, for example, plaintiff had good hygiene and appearance; he was oriented to person, place, time, and situation; he was alert and had good eye contact; his affect was appropriate, his mood euthymic, and his attitude cooperative. (*Id.* at 403). His thought processes and associations were logical; he was non-psychotic; his perception was unremarkable; his concentration and memory were good; and his intellect, insight, and judgment were fair. (*Id.* at 404). On February 21, 2014, Dr. Miljana Mandich noted that while plaintiff was of low average intelligence, he exhibited adequate understanding, cooperation, concentration, attention, and memory. (*Id.* at p. 304). On that date, he exhibited no visible nervousness of depressed mood and was sober. (*Id.*). On a few occasions, examiners noted limited insight, intellect, or judgment, but on May 19, 2015, despite those notations, plaintiff chose not to change his medications. Such a significant number of reports and observations of no mental or psychological issues supports the ALJ's mental RFC findings.

The ALJ also considered the opinion of Lester Barnett, Ph.D., a state agency medical consultant, who reviewed the record in February 2014 and found no significant mental limitations. (*Id.* at 30, 107-109). Barnett found that while plaintiff possesses lower than average intelligence, his understanding, cooperation, concentration, attention, and memory were adequate. (*Id.* at 109). State agency psychological consultants such as Barnett are experts in Social Security disability evaluations, and the regulations require ALJs to consider their opinions. 20 C.F.R. § 416.927(e)(2)(i).

As the ALJ observed, plaintiff's daily activities also demonstrate that he is mentally capable of performing simple, routine, and unskilled work. (Adm. Rec. at 21-22, 24, 29). Plaintiff reported that he shops for groceries, pays bills, handles his savings account, counts change, and

uses a checkbook/money orders. (*Id.* at 232). Plaintiff also testified that he works at a car wash three to five days a week for four to eight hour shifts under the terms of his rehabilitation program. (*Id.* at 56, 83). "It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995).

Here, plaintiff contends that the ALJ did not properly evaluate the opinion of one-time consultative psychiatrist, Donna Mancuso, M.D. (Adm. Rec. at 27, 29). Mancuso reported on a check-box form that plaintiff has no more than mild limitations in his ability to understand, remember, carry out simple instructions, and make judgments on simple-work-related decisions, which is entirely consistent with the ALJ's RFC assessment for simple, routine, unskilled work. (*Id.* at 445). Plaintiff focuses on Mancuso's check-marks that indicate that he has marked limitations in carrying out complex instructions, making judgments on complex work-related decisions, interacting with others, and responding appropriately to usual work situations and changes in routine work setting. (*Id.* at 445-46). The ALJ's RFC for simple, routine, unskilled work is entirely consistent with a restriction from complex, non-routine work. Unskilled work is the least complex type of work, Social Security Ruling ("SSR") 82-41, 1982 WL 31389 at *2 (January 1, 1982), and it primarily involves dealing with objects rather than data or people. SSR 85-15, 1985 WL 56857 at *4 (January 1, 1985). Plaintiff's argument thus misses the mark.

Plaintiff's argument also fails because even had the ALJ had adopted a restriction to interacting with others, it would not have altered her decision. The VE testified that even were plaintiff unable to interact with the public and could only occasionally interact with coworkers and supervisors, he can still perform the jobs of Janitor/Cleaner (with 1,000,000 jobs existing in the national economy), Maid/Housekeeper (with 373,000 jobs existing in the national economy), and

8

Stock Clerk/ Order (with 200,000 jobs existing in the national economy). (*Id.* at 32, 70-71). "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Plaintiff has cited this Court to no evidence that would have altered the ALJ's ultimate conclusion or the VE's testimony.

On the same date that Mancuso completed the check-box form, she also opined on a different form that plaintiff is "impaired" in his recent memory and concentration; ability to relate to others; ability to maintain attention and perform simple repetitive tasks for two hour blocks of time; ability to sustain effort and persist at a normal pace over the course of a forty hour week; ability to understand, remember, and follow simple commands; and ability to tolerate the stress associated with day to day work activity. (*Id.* at 449-55). The Court finds – as did the ALJ – that this opinion is inherently inconsistent with Mancuso's same-day opinion that plaintiff had no more than mild limitations with simple work. (*Id.* at 445). Internally inconsistent opinions are less reliable than consistent ones, and the regulations require that more weight be accorded consistent opinions. See 20 C.F.R. § 404.1527(c)(4) (stating that the more consistent an opinion is with the record, the more weight the agency will give it).

Specifically, the ALJ found Mancuso's opinion inconsistent with plaintiff's ability to work at a car wash three to five days a week for four to eight hours per day, during which time his responsibilities included ushering customers to the proper location to have their cars washed. (Adm. Rec. at 29). She further found the term "impaired" vague and inconsistent with his ability to tolerate simple work routines and social interactions with customers and co-owners at the carwash, with whom plaintiff could not recall any significant issues. (*Id.* at 55-56). It is well-

9

established law that the ALJ – and not this Court – must resolve inconsistencies in the evidence. *Martinez*, 64 F.3d at 174.

The Court finds that the ALJ considered and properly gave little weight to this opinion because it was contradicted by other evidence of record and because the use of the term "impaired" was vague and inconsistent with the rest of the record. (Adm. Rec. at 29). As already highlighted above, Mancuso's opinion is contradicted by the normal findings by treating sources, Barnett's expert opinion that plaintiff has no significant mental limitations, and plaintiff's significant daily activities and work activity. (*Id.* at 24-31, 56, 83, 107-109, 381-91, 404, 500, 505). Mancuso's statements that plaintiff's functioning is "impaired" does not correlate to any specific work-related limitations that the ALJ could import into her RFC findings. Suffering from an impairment does not establish disability. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). Plaintiff may disagree with the ALJ's assessment, but what may be "characterize[d] as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

Plaintiff maintains that the ALJ should not have considered his work activity because it was performed with accommodations. But the ALJ did not consider plaintiff's work activities in a vacuum for purposes of finding that he can engage in substantial gainful activity. It was simply one factor, among many, the ALJ considered when she weighed the evidence of record. (*Id.* at 29). Whether plaintiff received some accommodation does not lessen the fact that the work activity contradicts his claim that he was totally disabled.

Plaintiff argues that the ALJ did not fully develop the record because she did not re-contact Mancuso to clarify the opinion. It is well-settled law that an ALJ has a duty "to develop the record

10

fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock*, 84 F.3d at 728. The agency's regulations provide that it will re-contact a medical source only if there is insufficient evidence to determine whether a claimant is disabled in the record. 20 C.F.R. § 416.920b; *see Cornett v. Astrue*, 261 Fed. Appx. 644, 648 (5th Cir. 2008). The ALJ met her duty to develop the record and did not need to re-contact Mancuso here because there was substantial evidence in the record on which the ALJ relied to make her decision. As noted above, such substantial evidence includes the objective observations by plaintiff's treating physicians, Barnett's expert opinion, and plaintiff's daily activities. (Adm. Rec. at 56, 83, 107-109, 381-91, 404, 500, 505). Re-contacting Mancuso for clarification of her one-time evaluation was not necessary in light of the other evidence on the record. Therefore, the Court finds that the ALJ was not required to re-contact Mancuso.

As his last argument, plaintiff contends that the ALJ did not account for moderate limitations in concentration, persistence, or pace in the RFC assessment. Plaintiff refers to the ALJ's "paragraph B" findings in the psychiatric review technique assessment, which is used to evaluate mental impairments at steps two and three of the sequential evaluation process. (*Id.* at 22-23); SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996). As the ALJ correctly observed, however, the paragraph B findings are not an RFC assessment that "requires a more detailed assessment by itemizing various functions. . . ." (*Id.* at 23).

Plaintiff cites to authority from outside the Fifth Circuit for the proposition that an RFC for simple, unskilled work does not account for moderate limitations in concentration, persistence, or pace, but there is no such authority in this circuit. To the contrary, however, the Fifth Circuit has held that moderate deficiencies of concentration, persistence, or pace are accounted for with an

RFC restriction – similar to this case – of the ability to understand, remember, and carry out only routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making. *Herrera v. Comm'r of Soc. Sec'y*, 406 F. Appx. 899, 904 (5th Cir. 2010) (unpublished).

Because the psychiatric review technique is only a broad threshold inquiry, the ALJ properly performed a more detailed evaluation of plaintiff's mental limitations in her RFC discussion, pursuant to SSR 96-8p (Tr. 26-29). *See* SSR 96-8p, 1996 WL 374184 at *4. And, as noted above, substantial evidence supports the ALJ's finding that plaintiff's mental limitations limit him to no more than simple, routine, unskilled work. The ALJ interpreted the medical evidence to determine plaintiff's RFC, which is precisely and solely the responsibility of ALJ. *Taylor*, 706 F.3d at 603. Plaintiff's arguments to the contrary, the Court finds that substantial evidence supports the ALJ's RFC assessment, and plaintiff's claims thus fail.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions

accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 24th day of October, 2017.

_____
 **DANIEL E. KNOWLES, III**
 **UNITED STATES MAGISTRATE JUDGE**